**P. DOUGHERTY CO. v. CITY OF NEW YORK.**

**THE ANNAPOLIS.**

**THE WASHINGTON SQUARE.**

**No. 16368.**

District Court, E. D. New York.

Oct. 28, 1943.

See, also, 44 F.Supp. 441.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for libellant.

Ignatius M. Wilkinson, Corp. Counsel, of New York City (Herbert B. Lee, of New York City, of counsel), for respondent.

GALSTON, District Judge.

An interlocutory decree was filed in behalf of the libellant and the matter referred to a special master to ascertain and compute the amount of damages sustained by libellant. To the master's report the respondent has filed exceptions in respect to the following matters:

a. Towing charges in the amount of $60.

b. Demurrage in the amount of $1,207.-50.

c. A demurrage rate of $69 a day.

d. A demurrage period of thirty-five days.

e. Interest in the amount set forth in the report.

The Annapolis, which was damaged, is a coastwise type barge, built of wood, with a sharp bow and round stern, and was erected for transporting bulk cargoes. It will not be necessary to discuss the extent of the damage since the exceptions do not go either to the amount of temporary or permanent repairs.

Dougherty, an officer of the libellant, testified that after the collision the barge was towed from the point of collision to a dock for temporary repairs. That towage item is likewise not in dispute. After the temporary repairs had been effected, the barge carried loaded cargo from New York to Wilmington, Delaware, after which she was towed light from Wilmington to Hampton Roads, Virginia. At that point she was taken to the Collona's Shipyard at Berkley, Virginia, for survey, by the Woods Towage Corporation. The charge for such towage was $60., and that is the first item to which the respondent has filed excep-

tion. It is asserted that the towage was wholly unnecessary on the ground that the repairs to the barge were not made at Collona's Shipyard but were later made at the Davis Shipyard at Solomon's, some miles north of Lambert's Point, two or three weeks later. The master found that the libellant was entitled to the cost of towing from an anchorage to and from a shipyard and that that is all the libellant sought. The libellant did not make claim for towing the barge from the anchorage to Davis's yard at Solomon's and back again to the anchorage. The finding of the special commissioner as to the towage charge is sustained as having been proved to be necessary and the amount found reasonable.

◼ The second, third and fourth exceptions relate to demurrage, the rate and the period. The record discloses the earnings of the Annapolis for the period from February 11th to August 21, 1941. The rates for the four voyages of the barge up to June 13, 1941, which preceded the making of the permanent repairs, were $1.15, $1.50, $1.25 and $1.15 per ton, or as the special commissioner found, an average of approximately $1.25 a ton. A subsequent voyage on July 29, 1941, covering a period of twenty-four days was at the charter rate of $1.25. The finding of the special commissioner that the daily rate per voyage on the aforesaid five voyages of the Annapolis was approximately $69., though it involved some speculation, is justified by the proof. The figure obtained by dividing the total net receipts of the barge by the days consumed would yield an average of $63.64, as against the rate of $75.08, which is the figure obtained by dividing the total daily rates of the five voyages by five. The commissioner took the mean between the two figures, which I think in the circumstances was reasonable. Particularly is this so when compared with the earnings of sister barges of the Annapolis.

◼ The respondent asserts that the demurrage period of thirty-five days was improper. The libellant sought demurrage for forty-nine days—three days for temporary repairs and forty-six days for the period from June 13 to July 28, 1941—and the respondent argued that the allowance should be limited to twenty-two days, two days for the temporary repairs and twenty days for the permanent repairs. The commissioner sustained the respondent in re-

spect to the period for temporary repairs, but on the question of the balance of the time it appears that following the towage to Collona's Shipyard on June 13th—a Friday—the survey was held on June 16th and June 17, 1941, which was a reasonable time. Thereafter the barge was towed to the Davis yard where repairs were made over a period of twenty-eight days. The finding that the Annapolis was out of commission for a period of thirty-five days is therefore sustained.

◼ Finally, as to the matter of interest: the interlocutory decree, filed April 23, 1942, awarded interest.

Accordingly all of the exceptions are overruled and the report of the master is in all respects confirmed. Settle order on notice.